## COLLINS COMPANY *v.* COES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 164. Argued January 10, 11, 1889. — Decided March 5, 1889.

The first claim in reissued letters patent No. 5294, granted February 25, 1873, to the Collins Company, as assignee of Lucius Jordan and Leander E. Smith, for an improvement in wrenches, was only the application to the bar of the Coes wrench, (which was an existing patented invention,

at the date of the alleged invention of Jordan and Smith,) for the purpose of securing and supporting the step, and resisting the strain of a nut already in use on the Hewitt or Dixie wrench; and as such it lacks the novelty of invention requisite to support a patent within the recent decisions of this court; and this conclusion is not affected by the fact that in complainant's wrench the screw-rod of the Coes wrench is availed of instead of the screw-sleeve of the Dixie wrench.

The second claim in said reissue is for "the nut F, combined with the wrench-bar, and interiorly recessed at *d*, for the purpose set forth." Some years later the patentee filed in the Patent Office a disclaimer thereto "except when said recessed nut and wrench-bar are in combination with the handle G, the step or step-plate E, the screw-rod C, and the movable jaw B of the wrench, substantially as is shown and described in said last mentioned reissued letters patent," being the reissue in question; *Held*, that whether this qualified disclaimer was or was not effectual, it was, in view of the fact that the screw-rod and movable jaw of the patent had no different effect from the screw-sleeve and movable jaw of the prior Dixie wrench upon the other parts of the combination, an admission that the second claim of the patent is void for want of novelty.

The third claim of the patent is also void for want of novelty.

IN EQUITY. The court in its opinion stated the case as follows:

The Collins Company of Connecticut, a corporation located at Collinsville, in the county of Hartford and State of Connecticut, brought this suit in equity in the Circuit Court of the United States for the District of Massachusetts, against Loring Coes and Melvin O. Whittier, partners in business at Worcester, in Worcester County, Massachusetts, in the name and style of Loring Coes & Company, for the alleged infringement of reissued letters patent No. 5294, dated February 25, 1873, for an improvement in wrenches, issued to the Collins Company as assignee of Lucius Jordan and Leander E. Smith, said reissued letters patent being based upon original letters patent dated October 10, 1865, No. 50,364. There had also been a reissue February 22, 1870.

The specification and accompanying drawings of the reissue No. 5294 are as follows:

"The object of this invention is the prevention of end thrust or back pressure on the wooden handles of wrenches, which has heretofore availed to quickly destroy such wooden handles,

and, in destroying the handles, has left the working parts of the wrench which depended upon the handles for support without such support, so as to injure and effectually impair their working qualities and efficiency, and is accomplished by so connecting the step which forms a bearing for the lower end of the screw-rod with the bar which forms the main part of the wrench that the back pressure upon the step by the screw-rod will be directly transmitted to the wrench-bar at the place of connection therewith, and will not be transmitted to and mainly put upon the wooden handle.

"Figure 1 is a side view of the whole wrench, the part below the dotted line $xx$ being in section. Fig. 2 is a top or plan view of the step which forms a bearing for the lower end of the screw-rod.

"The letter A indicates the wrench-bar, flat-sided down to the under side of the step E, and from thence downward cylindrical or of other convenient shape, so as to take upon it the wooden handle G. B is the movable jaw. The letter C indicates the screw-rod, and D the rosette by which it is turned. The letter E indicates the step, in which is the bearing $s$ for the lower end of the screw-rod, and also the hole $a$ to admit the bar A, and fitting up against the shoulder $b$. On the bar A, just below the step E, is cut the screw-thread $i$, on which screws the nut F, forming a projection from the wrench-bar, on which rests the step E, and thus transmits the back pressure put upon the step directly to the wrench bar at the place

of connection therewith, and thus relieves the wooden handle therefrom, the connection of the step with the bar being made in such manner that the step may be removed or taken off the bar without any cutting or abrasion of parts.

" The nut not only supports the step, but can be made to rigidly fasten the step to the bar by screwing it firmly up against the step, so as to gripe it between itself and the shoulder *b*, thus giving the nut, so to speak, a double office, viz., that of supporting the step, and, also, that of fastening it rigidly to the bar. The nut is interiorly recessed at *d*, for the purpose of forming a ferrule for the top of the wooden handle.

" Heretofore the part designed to perform the office of the step E has rested directly on the wooden handle, which was secured upon the bar by a light nut *o*, at the lower extremity of the bar, which is the present method of fastening on the handle.

" It is known that, previous to this invention, steps have been forged or otherwise produced solid with the bar, and this became as much a part of it as the solid head at extremity of bar, and also by riveting to reach similar result; but such method, by making a permanent fastening, renders it impossible, or a work of great difficulty, to displace the step in order to remove the sliding jaw for repairs. It will be observed that, while Jordan and Smith's method of fastening is as firm as the permanent fastenings last above referred to, their step can readily be removed and again put in place at pleasure.

" It is believed that Smith and Jordan were the first to secure easy divisibility of step and bar, together with a fixed or stationary step when in position, and at the same time supporting the step when in position immediately by the bar, and not immediately through the handle, as the manner had been.

" As a matter of definition, the Jordan and Smith method of fastening and supporting the step when in position is denominated 'removable' hereinafter in contradistinction from a connection and support made by forging or otherwise producing the step in one solid piece with the bar, and, therefore, a part of it, or by riveting it thereto, or the like.

### Claims.

"1. The step, combined with the wrench-bar and supported by the nut F, or its equivalent, at the place where the step is connected with the bar, in such manner that the step can be removed from the bar without cutting or abrasion of parts.

"2. The nut F, combined with the wrench-bar, and interiorly recessed at $d$, for the purpose set forth.

"3. The nut F, combined with the threaded bar, and performing the office of supporting the step, and also of rigidly fastening it to the bar, for the purpose set forth."

April 16, 1841, a patent issued to Loring Coes for what has since always been known as the Coes wrench, and this was reissued June 26, 1849. The specification and drawings of the reissue are as follows:

"Figure 1 is an elevation of my improved wrench, and figure 2 an elevation of a wrench previously known but not of my invention.

"In my improved wrench the inner jaw slides on the bar of the permanent jaw and handle, and is moved by a screw at the side of the bar, operated by a head or rosette, which always remains in the same position relatively to the handle, whereby the movable jaw can be adjusted with the thumb of the hand, which grasps and holds the handle. The principle or character of my invention, and that which distinguishes it from all other things before known, consists in moving the adjustable jaw by means of a screw placed at the side of and parallel with the bar of the permanent jaw and handle, when the required rotation for sliding the jaw is given by a rosette or head, or the equivalent thereof, which retains the same position relatively to the handle; and my invention also consists in retaining the required position of the rosette or its equivalent, by which the required motion is given to the sliding jaw, by having its periphery to work in a notch or recess in the bar of the permanent jaw and handle, or *vice versa*.

"In the accompanying drawings A represents a quadrangular bar of metal with a permanent or hammer jaw C at one end, the other end being reduced in size to pass through a handle

L, secured to it by a nut M. Between the ferule of the handle and the shoulder of the bar an iron plate I is griped by the securing of the handle on to the bar, and this plate extends out sufficiently beyond the bar to receive the journal K (see dotted lines) of a screw F, which is placed parallel

*Fig.1.*

*Fig.2.*

with and by the side of the bar. This screw is tapped into a tubular piece D that projects from the back face of the adjustable jaw B, which is fitted to slide on the bar from or towards the permanent jaw C, the rear end of the tubular projection D being provided with and sustained by a bridle E, which embraces and slides on the bar. At the rear end the screw is provided with a head or rosette G, the periphery of which turns in a notch or recess H made in the edge of the bar, as shown by dotted lines, by which the position of the said rosette is retained relatively to the handle. The hand, represented by dotted lines, indicates the manner in which my improved wrench is operated. The handle is grasped by the fingers, and the rosette is operated by the thumb of the same hand, so that, without any change in the position of the hand, the movable jaw can be moved towards or from the permanent jaw, to set the wrench to any size required, with one hand.

" By means of my improvement the bar can be made of any desired form best adapted to the sliding jaw and to strength.

The rosette or its equivalent employed for operating the jaw is always retained in the same position relatively to the hand that gripes the handle. At the same time, the use of two bearings for the screw is avoided.

"The advantages of my improved wrench over other methods of construction will be seen by comparison with the wrench represented by figure 2 of the accompanying drawings.

"What I claim as my invention and desire to secure by letters patent is moving the sliding jaw by a screw, combined with and placed by the side of and parallel with the bar of the permanent jaw and handle, substantially as described, when the required rotation for sliding the jaw is given by the head or rosette, (or its equivalent,) which retains the same position relatively to the handle during the operation, substantially as described. And I also claim moving the sliding jaw by a screw, combined with and placed by the side of and parallel with the bar of the permanent jaw and handle, substantially as described, in combination with the rosette or its equivalent, retained in its position relatively to the hand in the manner described."

It appears from the evidence that during the years 1851 to 1854, E. F. Dixie was manufacturing, to the extent of from two hundred to four hundred wrenches per week of various sizes, a wrench known as the Hewitt wrench, which wrench contained a recessed nut screwed upon the wrench-bar just above the wooden handle, for the purpose of relieving the handle from back pressure put upon the step, and of serving as a ferrule for the upper end of the wooden handle. It had an adjusting screw-sleeve instead of the adjusting screw-rod of the Coes wrench, but was otherwise substantially the same.

The following diagrams give the various wrenches referred to on the argument:

Statement of the Case.

Defendants' Manufacture Complained of.

Complainant's Patented Wrench.

Dixie Wrench, Manufactured 1851–1854.

Coes' Wrench, Original Manufacture, before and since 1850.

Coes' Wrench, Patented April 16, 1841.

On the 9th of August, 1880, the Collins Company filed a disclaimer in the Patent Office, stating: "Further, that said The Collins Company has reason to believe that through inadvertence and mistake the second clause of claim made in said last-mentioned reissued letters patent, in the following words, to wit, '2, The nut F, combined with the wrench-bar, and interiorly recessed at $d$, for the purpose set forth,' is too broad, including that of which said Jordan and Smith were not the first inventors. Said The Collins Company therefore hereby enters its disclaimer to 'the nut F, combined with the wrench-bar, and interiorly recessed at $d$, for the purpose set forth,' except when said recessed nut and wrench-bar are in combination with the handle G, the step or step-plate E, the screw-rod C, and the movable jaw B of the wrench, substantially as is shown and described in said last-mentioned reissued letters patent," being the reissue in question.

The defendants contend that the patent in suit did not disclose a patentable invention in view of the prior state of the art; that the reissue described and claimed a different invention from that for which the original patent was granted; that the reissue was taken too long after the date of the original patent to be permitted upon equitable grounds; and that there was no infringement.

The Circuit Court originally granted an interlocutory decree in favor of the plaintiff, in accordance with the opinion of Judge Lowell, reported in 5 Bann. & Ard. Pat. Cas. 548, and 3 Fed. Rep. 225. But a rehearing was afterwards moved for and granted, the interlocutory decree vacated, and the bill dismissed, for the reasons stated in the opinion of Mr. Justice Gray, presiding in the circuit, in a similar suit by the plaintiff against other defendants, which opinion was as follows:

"This is a bill in equity for the infringement of the first claim in the specification of the second reissue to the complainant, dated February 25, 1873, of letters patent originally issued to Lucius Jordan and Leander E. Smith, on October 10, 1865, for an improvement in wrenches.

"The wrench, as described, both in the original patent and in the reissue, has the following parts: The wrench-bar A, the

upper part of which is of the usual shape, and has attached to it the movable jaw B, and the lower part of which is of convenient form to receive upon it the wooden handle ; a screw-rod C, parallel to the main bar ; a rosette D, at the lower end of the screw-rod, by means of which the movable jaw is worked ; a ferrule or step E, having a hole through it for the admission of the bar, and a recess in its upper face as a bearing for the lower end of the screw-rod ; a nut F, screwed on a thread in the bar, under the step, and having a recess in its under face to receive the top of the wooden handle G ; and the wooden handle secured at its lower end to the main bar by a nut in the usual way.

"Both the original patent and the reissue state that the object of the invention is to make the strain come upon the nut F instead of coming upon the wooden handle. The original patent states that the nut F is, and the reissue states that it may be, screwed up firmly against the step E. The reissue affirms and repeats that the distinguishing characteristic of the invention is that the step can be readily removed and replaced at pleasure. There is no hint of such a distinction in the original patent.

"The first claim of the original patent is for 'the step E, made substantially as described, and for the purpose set forth.' The corresponding claim in the reissue is for 'the step, combined with the wrench-bar, and supported by the nut F, or its equivalent, at the place where the step is connected with the bar, in such manner that the step can be removed from the bar without cutting or abrasion of parts.'

"The parallel screw-rod, with a rosette thereon to work the movable jaw, and resting upon a ferrule or step, had been introduced in the original Coes wrench, patented in 1841 ; and, long before the issue of the patent to Jordan and Smith in 1865, large numbers of the Hewitt or Dixie wrench had been made and sold, in which there was no separate screw-rod, and the screw that worked the movable jaw revolved on the main bar, but that screw rested on a ferrule or step, which was secured sometimes by driving it on under heavy pressure, and sometimes by a nut screwed under it on the bar.

"The application to the bar of the Coes wrench, for the purpose of securing and supporting the step, and resisting the strain, of a nut already in use for the same purpose, on the Hewitt or Dixie wrench, lacks the novelty of invention requisite to support a patent, within the decisions of the Supreme Court at the last term, which have, in effect, overruled the earlier decision of this court in the suit of this complainant against Loring Coes and others, reported in 5 Bann. & Ard. Pat. Cas. 548. *Pennsylvania Railroad* v. *Locomotive Engine Safety Truck Co.*, 110 U. S. 490; *Bussey* v. *Excelsior Manuf. Co.*, 110 U. S. 131; *Double-Pointed Tack Co.* v. *Two Rivers Manuf. Co.*, 109 U. S. 117; *Phillips* v. *Detroit*, 111 U. S. 604.

"The complainant's patent being void for want of novelty, it becomes unnecessary to consider the other defences.

"Bill dismissed, with costs."

*Mr. William Edgar Simonds* for appellant.

*Mr. George L. Roberts* for appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

We concur with the Circuit Court in its disposition of this case and the grounds upon which it rested its decision.

The wrench-bar, the fixed jaw upon its upper end, the movable jaw sliding upon the wrench-bar, the screw-rod parallel with the wrench-bar, the rosette upon the lower end of the screw-rod, the step-plate surrounding the wrench-bar, the wooden handle secured by the nut at its extreme lower end, are all described in the patent to Coes; and the nut screwed upon the wrench-bar just below the step-plate, and provided with a recess for the purpose of forming a ferrule for the top of the wooden handle, which is not in the Coes patent, but is in complainant's reissue, had already been in use in the Hewitt or Dixie wrench for the same purposes. The disclaimer conceded that "the nut F, combined with the wrench-bar, and

interiorly recessed at *d*, for the purpose set forth" was an old device; but it is claimed that the device is new when the recessed nut and wrench-bar are in combination with the handle, the step, the screw-rod and the movable jaw. The handle, the step, the screw-rod and the jaw are all to be found in the Coes and Dixie wrenches, and the recessed nut of the Dixie wrench constituted, by the shoulder which it made at its upper end, a step upon which the screw rested, and served every purpose designated in the reissued patent in suit as intended to be secured by such recessed nut. This in itself justified the finding that "the application to the bar of the Coes wrench, for the purpose of securing and supporting the step and resisting the strain, of a nut already in use, for the same purpose, on the Hewitt or Dixie wrench, lacks the novelty of invention requisite to support a patent." This conclusion is not affected by the fact that in complainant's wrench the screw-rod of the Coes wrench is availed of instead of the screw-sleeve of the Dixie wrench.

Complainant's first claim is as follows: "1. The step, combined with the wrench-bar and supported by the nut F, or its equivalent, at the place where the step is connected with the bar, in such manner that the step can be removed from the bar without cutting or abrasion of parts." The specification says: "On the bar A, just below the step E, is cut the screw thread *i*, on which screws the nut F, forming a projection from the wrench-bar, on which rests the step E, and thus transmits the back pressure put upon the step directly to the wrench-bar at the place of connection therewith, and thus relieves the wooden handle therefrom, the connection of the step with the bar being made in such manner that the step may be removed or taken off the bar without any cutting or abrasion of parts."

The elements of this combination are the support of the step by the nut F, the transmission of back pressure directly to the wrench-bar through that nut, and the removability of the step without cutting or abrasion of parts. Now the Dixie wrench contained the nut F, screwed on the wrench-bar, and transmitting the back pressure directly to it, and removable without cutting or abrasion, by being simply unscrewed.

The second claim is: "The nut F, combined with the wrench-bar, and interiorly recessed at $d$, for the purpose set forth." This, as so stated, was disclaimed, except when said recessed nut and wrench-bar are in combination with the handle, the step, the screw-rod and the movable jaw.

It was said in *Hailes* v. *Albany Stove Company*, 123 U. S. 582, 587, the court speaking through Mr. Justice Bradley: "A disclaimer is usually and properly employed for the surrender of a separate claim in a patent, or some other distinct and separable matter, which can be exscinded without mutilating or changing what is left standing. Perhaps it may be used to limit a claim to a particular class of objects, or even to change the form of a claim which is too broad in its terms; but certainly it cannot be used to change the character of the invention. And if it requires an amended specification or supplemental description to make an altered claim intelligible or relevant, whilst it may possibly present a case for a surrender and reissue, it is clearly not adapted to a disclaimer."

The complainant's qualified disclaimer is an admission that the second claim of the patent is void for want of novelty, which is true, even if the qualification were effectual, since, as we have seen, the screw-rod and movable jaw of the patent have no different effect from the screw-sleeve and movable jaw of the prior Dixie wrench, upon the other parts of the combination.

The other claim is: "3. The nut F, combined with the threaded bar, and performing the office of supporting the step, and also of rigidly fastening it to the bar, for the purpose set forth." The specification says: "The nut not only supports the step, but can be made to rigidly fasten the step to the bar by screwing it firmly up against the step, so as to gripe it between itself and the shoulder $b$, thus giving the nut, so to speak, a double office, viz., that of supporting the step, and, also, that of fastening it rigidly to the bar. The nut is interiorly recessed at $d$, for the purpose of forming a ferrule for the top of the wooden handle." The purpose of supporting the step by the nut F, and fastening the step rigidly to the wrench-bar by means of that nut, is the relief of the wooden

handle from the strain of back pressure. In the Dixie wrench the step and. nut were made of one and the same piece of metal, thereby fully attaining the object of holding the step-plate rigidly fastened in position. In the Coes wrench the step was rigidly fastened to the bar by being griped between a shoulder above it and upon the bar and the handle below it, which was backed up by the nut screwed upon the lower extremity of the bar. Dispensing with a washer between a nut and that upon which it acts, makes no change in the office of the nut. The action of the nut M of the Coes wrench in griping the step-plate is the same as that of the nut F of the patent. This third claim is also void for want of novelty.

*The decree of the Circuit Court is affirmed.*